IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CR-106-MHT-GMB |
| | ) | [WO] |
| STEVEN PRUITT, JR. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the court is a Motion to Suppress (Doc. 215) filed by Defendant Steven Pruitt, Jr. The court held an evidentiary hearing on the motion on May 9, 2019 and has reviewed the Government's response to the motion (Doc. 217), along with the parties' evidentiary materials and the relevant law. For the reasons to follow, the Magistrate Judge RECOMMENDS that the Motion to Suppress (Doc. 215) be DENIED.

### I. INTRODUCTION

A Grand Jury sitting within the Middle District of Alabama returned a superseding indictment against Pruitt on three counts: one count of conspiracy to distribute and possess a controlled substance, one count of distribution of a controlled substance, and one count of possession of a firearm in furtherance of a drug trafficking crime. Doc. 96. Pruitt claims in his motion to suppress that the Government obtained the evidence supporting these charges through an illegal search of a residence, an illegal search of a vehicle, and an illegal search of his person. Specifically, Pruitt seeks to suppress "all evidence and all statements seized" as a result of the search warrant executed on July 20, 2017. Doc. 215 at 1. The court recommends that Pruitt's request to suppress the evidence and statements obtained during the execution of the search warrant be denied.

## II. FACTS

The testimony, briefing, and evidentiary materials offered at the hearing on Pruitt's motion established the following facts.

Ebony Dailey is a special operations detective for the Montgomery Police Department ("MPD"). Transcript of May 9, 2019 Hearing ("Tr.") at 5. During July 2017, a confidential informant told her that drugs were being sold from a residence located at 2461 Brooks Court, Montgomery, Alabama. Doc. 217-1. This was Dailey's first time to use this particular confidential informant. Tr. at 17. One other officer at MPD had used the informant in the past. Tr. at 18–19.

The confidential informant told Dailey that a black male known as "Steve" was selling drugs from the Brooks Court location. Doc. 217-1. The informant described "Steve" as being "in his 30s, dark complexion, approximately 6'0, approximately 230 pounds and low haircut style." Doc. 217. Also during July 2017, Dailey used the informant to conduct a controlled buy of marijuana from "Steve." Doc. 217-1.

Using the information generated by the informant, Dailey prepared a search warrant and affidavit for the Brooks Court residence "and any areas and vehicles attached to the curtilage and associated to the residence." Docs. 217-1 & -2. On the face page of the warrant and within the affidavit, Dailey listed the property to be searched as "2461 Brooks Court, Montgomery, Alabama." Docs. 217-1 & -2. She described the residence as a tan, single-story house with a brick exterior. Doc. 217-1. In the affidavit, she described "Steve" as a "black male in his 30's, dark complexion, approximately 6'0, approximately 230 pounds and low haircut style." Doc. 217-1. Dailey disclosed that this information

came from a confidential informant identified in the affidavit with the shorthand "A." Doc. 217-1. Dailey's affidavit described the controlled purchase of marijuana as follows:

> [D]uring the month of July 2017[,] "A" under the direct control and supervision of Detective E.L. Dailey #2464 and Sergeant J.S. Dunn went to 2461 Brooks Court, Montgomery, AL to attempt to make a controlled purchase. "A" advised he/she made contact with "Steve" inside the residence. "A" advised he/she asked "Steve" for pound of mid (meaning marijuana). "A" advised that "Steve" retrieved a quantity of marijuana from a bag. "A" advised that "Steve" handed him/her a quantity of marijuana. "A" then gave "Steve" a quantity of the Montgomery Police Department Drug Buy Money. **This controlled drug buy occurred within 72 hours of the issuance of this warrant.**

Doc. 217-1.

Before signing the warrant, a municipal court judge sitting within the City of Montgomery, Judge Milton J. Westry, Sr., asked Dailey for more facts about the controlled buy. Tr. at 7. At the evidentiary hearing, Dailey testified that she could not remember the specific questions Judge Westry asked, but she did remember what she told him. Tr. at 7–8 & 16. This included the following facts. Dailey and Sergeant Dunn conducted surveillance of the controlled buy. Tr. at 7. They searched the confidential informant before sending him[1] into the Brooks Court residence. Tr. at 7. During the controlled buy, Dailey and Dunn listened in real time to the informant's conversation with "Steve" using a radio transmitter and concealed microphone. Tr. at 7 & 12–13. They searched the informant after he left the residence and retrieved a pound of marijuana from him. Tr. at 7–8.

---

[1] For convenience, the court uses masculine pronouns to describe the confidential informant. The attorneys and witnesses interchanged masculine and feminine pronouns during the evidentiary hearing. *See* Tr. at 7, 10 & 27.

3

Dailey was unable to recall whether Judge Westry asked about the confidential informant's reliability. Tr. at 16. However, Dailey testified that she was sure that she told the judge about the informant's reliability because she is "always speaking of the reliability of [her] confidential informants." Tr. at 16. Even so, she did not have any specific memory of what she said about the informant's reliability. Tr. at 16. On this showing, Judge Westry authorized the warrant on July 14, 2017 at 12:00 p.m. Doc. 217-1.

On July 20, 2017 at 12:32 p.m., MPD officers executed the search warrant at 2461 Brooks Court, Montgomery, Alabama. Doc. 215 at 2. At that time, Pruitt was sitting in a red Ford Focus sedan parked in the driveway. Doc. 215 at 2. During the search of the residence, the officers found 622 grams of marijuana; two digital scales; a Glock .40 caliber magazine containing nine rounds of ammunition; and assorted documents, including a traffic ticket for Pruitt and mail addressed to Pruitt. Doc. 215 at 2–3. Inside the Ford Focus, the officers found a black Samsung Gusto 3 cell phone, a rose-colored iPhone, and a white Samsung Galaxy Core cell phone. Doc. 215 at 3. They found United States currency and a Glock 22 .40 caliber handgun with a magazine loaded with nine rounds and on Pruitt's person. Doc. 215 at 3.

### III. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution ensures the right to be free from unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The law requires law enforcement officers to obtain a warrant from a neutral and detached

4

magistrate or judge. *See United States v. Young*, 229 F. Supp. 2d 1325, 1328 (M.D. Ala. 2002). The Eleventh Circuit has held that "[t]he standard for our review of the magistrate's determination is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990) (internal citation and quotation marks omitted). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Spinelli v. United States*, 393 U.S. 410, 419 (1969). "We have also said that the practical nature of the magistrate's decision justifies 'great deference' upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases." *Nixon*, 918 F.2d at 900 (citing *United States v Lockett*, 674 F.2d 843, 845 (11th Cir. 1982)).

## IV. DISCUSSION

Asserting that Dailey's affidavit does not establish the confidential informant's reliability and veracity, Pruitt challenges the probable cause finding. Doc. 215 at 4 & 7. For the reasons explained below, the court finds that the search warrant passes constitutional muster.[2]

### A. Probable Cause

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts"—and must be judged on the totality of the circumstances

---

[2] The Government conceded at the evidentiary hearing that there are no applicable search warrant exceptions in this case. Tr. at 3. Accordingly, the court will limit its discussion to whether probable cause supported the search warrant and, if not, whether the *Leon* good-faith exception applies.

presented in each case. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The task of the magistrate issuing a warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there exists a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Foree*, 43 F.3d 1572, 1575 (11th Cir. 1995). After *Gates*, the Eleventh Circuit has rejected any *per se* rule mandating independent police corroboration of a confidential informant. *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v. Harris*, 403 U.S. 573, 576 (1971); *United States v. Farese*, 612 F.2d 1376, 1378 (5th Cir. 1980)). Moreover, courts have recognized that there is more than one way to corroborate information. For example, creating circumstances in which an informant is unlikely to lie, like a controlled surveillance operation, could serve as meaningful corroboration of other information disclosed by the informant. *Foree*, 43 F.3d at 1576. And *Gates* also made clear that probable cause is no longer determined by a two-prong "veracity" and "basis of knowledge" test. *Id.* Instead, as stated above, the court considers the totality of the circumstances in assessing probable cause.

*Brundidge* is a close analogue here. In that case, the confidential informant (described in the opinion as a "CI") pointed out a motel room to the affiant and identified the subject inside by a nickname, telling the officer that he had seen in the room large quantities of cocaine powder along with both uncut cocaine base "cookies" and cocaine base prepared for distribution. *Brundidge*, 170 F.3d at 1353. Applying *Gates*, the *Brundidge* court found that this detailed description, combined with "a statement that the

event was observed firsthand," was strong evidence of the informant's basis of knowledge—enough to have "made up for any weaknesses in the CI's veracity." *Id*. But the court independently assessed the informant's veracity, finding to be "satisfactory" the warrant's recitation "that the CI had provided information to law enforcement 'at least' eight times in the past and that the CI was 'truthful and reliable' on each occasion." *Id*. These facts supported a finding of probable cause.

Through the lens of *Brundidge*, the instant facts also establish probable cause. Pruitt's informant provided the address of the residence to Dailey and, as in *Brundidge*, relayed that he had seen illegal drug activity in the apartment. Doc. 217-1; *Brundidge*, 170 F.3d at 1352. He identified the subject selling drugs by a nickname, just as the CI did in *Brundidge*. Doc. 217-1; *Brundidge*, 170 F.3d at 1352. But where the *Brundidge* CI described the subject only as a "black male," Pruitt's informant gave the description of a "black male in his 30's, dark complexion, approximately 6'0, approximately 230 pounds and low haircut style." Doc. 217-1. Officers may corroborate an informant's allegations in multiple ways. "Independently confirming that what she said is true is one way; creating circumstances under which she is unlikely to lie is another." *Foree*, 43 F.3d at 1576. The informant's specific description of the suspect "meant that the CI was unlikely to lie, because 'if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly.'" *Brundidge*, 170 F.3d at 1353–54 (quoting *Foree*, 43 F.3d 1576). Both the level of detail in describing the subject and the informant's firsthand basis of knowledge tend to show probable cause for the search even though the affidavit omits a recitation of the informant's reliability.

7

This is to say nothing of the controlled drug buy described in the affidavit, which undercuts any argument that the affidavit lacks independent corroboration. The *Brundidge* CI merely saw drugs in the subject's motel room. *Brundidge*, 170 F.3d at 1352. Pruitt's informant did the *Brundidge* CI one better—first he told Dailey that "Steve" was selling drugs out of the Brook Court residence, and then he made a controlled buy under the "direct control and supervision" of Dailey and Dunn. Doc. 217-1. Dailey briefly describes the buy in the affidavit, which recounts that the informant made contact with "Steve" inside the Brooks Court home and requested marijuana, which "Steve" retrieved from a bag and exchanged for MPD buy money. Doc. 217-1. While "controlled buy" is a law enforcement term of art that is not defined in the affidavit, there is at least some promise of corroboration implicit in this description of the purchase and the statement that it was accomplished under an officer's "direct control and supervision." In this way, the description of the controlled buy buttresses the court's finding of probable cause. *See, e.g.*, *United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006) (finding a controlled buy described in an affidavit sufficient to establish probable cause).

*Young* also is instructive. In *Young*, 229 F. Supp. 2d at 1330, the officer included the following facts in his affidavit to support a search warrant: an anonymous tipster alerted law enforcement that a person was selling crack cocaine from room 320 of the Villager Lodge motel in Montgomery, Alabama and threatening to shoot people who owed him money. The next day, a confidential informant told law enforcement officers that he had seen two ounces of cocaine in the defendant's room, room 320, along with a .45 caliber handgun. *Id.* The informant provided the following description of the defendant: "a black

male, 6'2", 200 pounds with low hair and a dark complexion." *Id.* The district court found that the affidavit provided sufficient indicia of probable cause. *Id.* at 1331. The court observed that the informant and tipster corroborated the information that cocaine and a gun were both present in room 320. *Id.* at 1330. The court also noted that the level of detail and specificity meant that the confidential source was unlikely to lie because he had provided an address, the amount of cocaine present, a physical description of the suspect, the suspect's weapon, and his name and nickname. *Id.* Ultimately, the district court determined that the authorizing municipal judge had a substantial basis for concluding that probable cause existed. *Id.*

Here, Judge Westry also had a substantial basis for concluding that probable cause existed because the confidential informant's information was corroborated by the controlled buy, and the level of detail the informant provided meant that he was unlikely to lie.[3] As in *Young*, where information was corroborated by other evidence, the information from Pruitt's informant was corroborated by the controlled buy under the direct control and supervision of Dailey and Dunn. Doc. 217-1. The successful controlled buy confirmed that drugs were being sold at the Brooks Court residence. Doc. 217-1. And, like in *Young*, where the informant's level of specificity created a situation in which

---

[3] A magistrate may consider sworn, unrecorded oral testimony when making a probable cause determination. *See United States v. Donaldson*, 558 F. App'x 962, 967 n.3 (11th Cir. 2014); *United States v. Kubaryk*, 2015 WL 6396033 (M.D. Ga. Oct. 22, 2015). This is because the "'Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by Oath or affirmation.'" *Donaldson*, 558 F. App'x at 967 n.3 (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994)). Although Dailey testified that she provided oral information to Judge Westry, the Government did not establish that this oral testimony was given under oath. Accordingly, the court did not consider any extrinsic oral information in reviewing the probable cause finding.

he was unlikely to lie, the level of detail provided in the physical description, the address, and the nickname created circumstances in which Pruitt's informant was unlikely to lie. Thus, as discussed above, the reasoning in both *Brundidge* and *Young* supports the finding that probable cause supported the search warrant.

**B.     The Good-Faith Exception**

At any rate, the MPD officers' reliance on this search warrant fits squarely within the good-faith exception first announced in *United States v. Leon*, 468 U.S. 897 (1985). *Leon* "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).   This exception to the exclusionary rule applies in "all but four limited sets of circumstances." *Id.* at 1313.   Those circumstances are: "(1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (internal citation and quotation marks omitted).

At the evidentiary hearing, Pruitt's counsel indicated that he was traveling under the third carve-out to the good-faith exception. Tr. at 24. However, the "important fact [here] is that Judge [Westry] analyzed [Dailey's] affidavit and concluded that probable cause was present." *Young*, 229 F. Supp. 2d at 1331. There can be little debate whether Dailey's affidavit could have included more specific information now that she has testified that she knew much more about the informant's history and the details of the controlled buy than she committed to paper. Had she merely taken the time to include these facts in her affidavit, she likely would not have invited a motion to suppress challenging the warrant. That being said, this "was not a bare-bones affidavit simply containing conclusory allegations of criminal wrongdoing." *Id.* (citing *United States v. Glinton*, 154 F.3d 1245, 1247 (11th Cir. 1998)). Dailey's affidavit relayed fresh information in as much as she presented it to the issuing judge less than 72 hours after the controlled buy linking "Steve" to the Brooks Court residence and the Brooks Court residence to criminal activity. *See id.* And, for the reasons set forth above, the court finds that the warrant was not so completely lacking in probable cause that it was unreasonable for the MPD officers to rely on it. *Cf. United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) (finding *Leon* good-faith reliance even where district court found that the facts in the warrant did not support probable cause). "When officers engage in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *United States v. Lewis*, 262 F. App'x 950, 952 (11th Cir. 2008) (citing *Martin*, 297 F.3d at 1313). The Government has carried its burden of demonstrating that the *Leon* good-faith exception would prevent the

suppression of the evidence seized from the Brooks Court home even if the court found the warrant to be unsupported by probable cause.[4]

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Suppress (Doc. 215) be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to this Recommendation on or before **May 31, 2019.** Any objections filed must identify the specific findings in the Magistrate Judge's recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the district court. The parties are advised that this recommendation is not a final order of the court, and therefore it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE on the 21st day of May, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[4] Pruitt has not advanced any independent basis for suppression of his post-arrest statement. The court's findings of probable cause and *Leon* good faith therefore compel a finding that Pruitt's request to suppress his statement is due to be denied.